REX COAL COMPANY,
INC., Petitioner,

v.

SECRETARY OF LABOR, MINE
SAFETY AND HEALTH ADMINIS-
TRATION; Federal Mine Safety and
Health Review Commission, Respon-
dents.

No. 14–4123.

United States Court of Appeals,
Sixth Circuit.

Oct. 29, 2015.

BEFORE: BATCHELDER, ROGERS, and KETHLEDGE, Circuit Judges.

ROGERS, Circuit Judge.

This case is about safety violations at a coal mine that resulted in a fatal accident. Rhett Mosley, a truck driver at Rex Coal's mine, was killed after he lost control of his truck while descending a hill. He was descending the hill in neutral gear, apparently by accident, and the truck's brakes were in such poor condition that they could not stop the truck. After an investigation, a Mine Safety and Health Administration (MSHA) investigator issued three citations to Rex Coal for failure to maintain full control over the truck, failure to equip the truck with adequate brakes, and failure to perform an effective preshift inspection of the truck. After a hearing, an administrative law judge (ALJ) upheld the three citations and assessed civil penalties totaling $157,500. Rex Coal petitions for review. Rex Coal blames the accident on Mosley's driving the truck in neutral, and Rex Coal also claims it was diligent in its preshift inspection of the brakes. These arguments, however, do not warrant relief.

Rhett Mosley was a lube truck driver at a Rex Coal mine. Driving a three-axle lube truck that weighed 55,000 pounds when filled, his job was to supply diesel fuel and lubricants to equipment throughout the mine. This 25–metric–ton truck had six service brakes (one for each wheel), four parking brakes, and an engine brake.

On the day of the accident, Mosley was parked at the top of a roadway. The roadway was 524 feet long and at a 22% grade, although the top of the roadway had a 25% grade for 180 feet. Informed by a co-worker that he could use a service road at the base of the roadway, Mosley began to descend the hill. A witness saw the truck descend the hill at an usually high speed, rock back-and-forth, hit a berm, and come off the ground. The truck crashed, and Mosley either jumped or was thrown from the truck. Mosley was killed in the accident.

After the fatal accident, MSHA conducted an investigation. Inspector David Faulkner interviewed witnesses and inspected the accident scene, while mechanical engineer Terry Marshall evaluated the truck and conducted formal interviews. Based on this investigation, the MSHA inspector issued three citations: 1) failure to maintain full control over the truck in violation of 30 C.F.R. § 77.1607(b); 2) failure to equip the truck with adequate brakes in violation of 30 C.F.R. § 77.1605(b); and 3) failure to perform an effective preshift inspection of the truck in violation of 30 C.F.R. § 77.1606(a). Rex Coal objected to the citations, and a hearing followed.

The following relevant facts were established at the hearing. Mosley had descended the hill at faster-than-normal speeds in neutral gear, attempted to apply the brakes, but lost control of the truck and crashed. Every witness who opined

on the matter, including the MSHA inspector, testified that they would not have descended the hill in neutral. The truck could have been in neutral as a result of "driver error" or because the transmission had slipped out of gear as the truck went over the hill. A pushrod-stroke measurement of the truck's brakes performed by MSHA after the accident revealed that the brakes were in poor condition, operating at somewhere between 20% and 50% of their braking capacity. Brakes in this condition could stop the truck only in low demand situations. Adequately maintained brakes would have been capable of stopping the truck, even in neutral gear. However, had the truck been in first gear, even the poorly maintained brakes should have been able to stop the truck. Rex Coal's preshift inspection had failed to discover the poor condition of the brakes. Rex Coal's preshift brake inspection was done by driving the truck onto a slight grade and applying the brakes, which was standard practice for coal mines in that region.

After the hearing, the ALJ upheld the three citations and assessed a civil penalty of $52,500 for each citation, totaling $157,500. For each citation, the ALJ had to make findings on whether a violation occurred, the gravity of the violation, and the level of the operator's negligence. For each of the three citations, the ALJ found that Rex Coal had violated the applicable regulation, that the gravity of the violation was severe and substantial, and that the level of Rex Coal's negligence was moderate.

The ALJ concluded, and Rex Coal conceded, that 30 C.F.R. § 77.1607(b) was violated because Mosley did not have full control of the truck. Because the violation resulted in a fatal accident, the ALJ assessed the gravity of the violation as severe and substantial. Choosing between high, moderate, low, and no negligence,

the ALJ determined the Rex Coal's conduct was moderately negligent. The ALJ reasoned that Rex Coal's foreman, who was responsible for maintenance of the truck, was negligent in failing to ensure that unsafe equipment was repaired or removed from service. This negligence was mitigated by the fact that the flaws in the brakes had not been marked on the pre-operational examination forms. Rex Coal argued that the accident was due solely to Mosley's actions and that any negligence by Mosley was not attributable to Rex Coal because he did not have a supervisory responsibility necessary to qualify as an agent. The ALJ agreed that Mosley was not an agent of Rex Coal, but concluded that the foreman's negligence in maintaining the brakes was the cause of the accident. The ALJ determined that a large penalty was appropriate because the violation resulted in a fatal accident, and ordered a civil penalty of $52,500.

Next, the ALJ found that 30 C.F.R. § 77.1605(b) was violated because Rex Coal had not equipped the truck with adequate brakes. Noting that a "demonstrated inadequacy" of the brakes under "normal operating capacity" was a violation, *see Wilmot Mining Company*, 9 FMSHRC 684, 688 (Apr. 1987), the ALJ found that the brakes were not adequate because they could not stop the truck traveling with its typical load and on a typical grade. The ALJ also credited the MSHA mechanical engineer's testimony that the brakes were out of adjustment, contaminated with a grease-like substance, and likely operating at 20% capacity. Rex Coal argued that the brakes would have been able to stop the truck under normal mining conditions such as the truck's being in gear. The ALJ rejected this argument, stating that the applicable standard considered only whether the brakes could stop a truck carrying its typical load on a typical grade, and that, in any event, truck being out of

gear was a foreseeable mining condition. The ALJ determined that the gravity of the violation was severe and substantial. Rex Coal objected that the violation was not severe and substantial because it was caused by the truck's being out of gear, but the ALJ observed that the inquiry was whether the violation contributed to a safety hazard and that both the inadequate brakes and the truck's being out of gear contributed to the hazard without negating the other. The ALJ determined that Rex Coal was moderately negligent, because it should have discovered the poor condition of the brakes had its agents conducted an adequate practical examination. This negligence was mitigated by evidence showing that the brakes had been adjusted within a month of the accident and that the brakes functioned when the truck was in gear. Rex Coal argued that the brake inspection method used by the MSHA mechanical engineer, the pushrod-stroke measurement, was not standard practice, but the ALJ rejected this argument, concluding that any competent examination should have uncovered the brakes' inadequacy. The ALJ ordered a civil penalty of $52,500.

Finally, the ALJ found that Rex Coal had violated 30 C.F.R. § 77.1606(a) by failing to conduct a preoperational examination and correct or record any existing equipment defects. The ALJ credited the MSHA inspector's testimony that several defects existed at the time of the preoperational examination but were not corrected or recorded. The inspector testified that five of the six service brakes and three of the four parking brakes were inadequate, that at least one of the brakes had been defective for more than a month, that the driver's seatbelt was improperly installed in a manner that created choking hazard and a risk that the belt would snap during an accident, and that the front windshield had been cracked for several work shifts. Rex Coal again argued that the pushrod-

stroke measurement was not standard practice and that the grease-like substance contaminating the brakes would not have been discovered during a reasonable preoperational examination because it would require removing the wheels. The ALJ rejected these arguments, reasoning that the mechanical causes of the brakes' inadequacies were not legally relevant; the brakes were demonstrably inadequate because they could not stop the truck and a reasonable inspection would have discovered such significant brake defects. The inspection method used by Rex Coal, testing the brakes with a stationary truck on a flat surface or slight incline, was not a reasonable inspection because it did not reveal whether the brakes would work when the truck was moving down its typical 22% grade. The ALJ determined that the gravity of the violation was severe and substantial, and that Rex Coal was moderately negligent. The ALJ ordered a civil penalty of $52,500.

The Mine Safety and Health Review Commission declined review. Rex Coal petitions for review. Rex Coal seeks remand with instructions to enter a finding of no negligence on the first citation for failure to maintain full control of the truck, and vacatur of the other two citations. For the third citation for failure to perform an effective preshift inspection, Rex Coal requests, in the alternative, remand with instructions to enter a finding of low or no negligence.

 With respect to the first citation for violating 30 C.F.R. § 77.1607(b), Rex Coal was negligent in failing to ensure that the truck was mechanically capable of being fully controlled by Mosley. Section 77.1607(b) states that "[m]obile equipment operators shall have full control of the equipment while it is in motion." The ALJ's factual findings are reviewed for

substantial evidence and the ALJ's application of law to the facts is reviewed de novo. *See Pendley v. Fed. Mine Safety & Health Review Comm'n*, 601 F.3d 417, 422–23 (6th Cir.2010). Because of Rex Coal's negligence, the truck's brakes were in remarkably poor condition, contaminated with a grease-like substance, and operating at between 20% and 50% of their braking capacity. They were in such poor condition that, when Mosley applied the brakes, the brakes could not help him control the truck. As the MSHA mechanical engineer testified, had the truck's brakes been in better condition, Mosley could have maintained full control of the truck, even when driving in neutral. Rex Coal argues that Mosley's driving the truck in neutral—an act not attributable to Rex Coal because Mosley was not Rex Coal's agent—was the only negligent act that contributed to the violation. But Rex Coal was negligent in failing to equip the truck with adequate brakes capable of controlling the truck in the foreseeable circumstance of the truck's slipping out of gear. This negligence contributed to the violation because, when the truck did slip out of gear, the truck could not be controlled by the brakes. These factual findings were supported by substantial evidence.

■ Next, the ALJ did not err in determining that the truck lacked adequate brakes as required by 30 C.F.R. § 77.1605(b). Section 77.1605(b), in relevant part, states that "[m]obile equipment shall be equipped with adequate brakes." The regulations do not define "adequate brakes." Drawing from an earlier, widely-cited ALJ opinion, the ALJ defined adequate brakes as brakes "capable of stopping and holding the equipment with its typical load on the maximum grade it travels." *See Secretary v. Nally & Hamilton Enterprises, Inc.*, 31 FMSHRC 689, 695 (June 1989). The Secretary endorses this

standard on appeal. Rex Coal does not challenge the standard, but argues that the ALJ should have assumed, for purposes of the analysis, that the truck was in the proper gear. The ALJ was not required to assume this.

According to Rex Coal, for brakes to be adequate under § 77.1605(b), they need to be capable only under normal mining conditions, but it cites no commission precedent that supports this argument. Rex Coal cites *Secretary v. U.S. Steel Mining Co., Inc.*, 6 FMSHRC 1573 (July 1984), and *Secretary v. Peabody Coal Co.*, 17 FMSHRC 508 (Apr. 1995), but these decisions approved the consideration of normal mining conditions in the context of determining whether the gravity of a violation was serious and substantial, not whether a violation occurred. A different standard applies to the determination of the gravity of a violation because the gravity determination requires a predictive inquiry into whether the violation is reasonably likely to result in a reasonably serious injury, *see Secretary of Labor v. Mathies Coal Co.*, 6 FMSHRC 1, 3–4 (Jan. 1984), a prediction which may assume "continued normal mining operations," *U.S. Steel Mining Co.*, 6 FMSHRC at 1574.

Even imputing into § 77.1605(b) an assumption of normal mining conditions, Rex Coal's argument falters on the ALJ's determination that normal mining conditions can include a truck's being in the wrong gear. The ALJ determined that a driver's accidentally putting the truck into the wrong gear or the transmission's accidentally slipping out of gear were foreseeable hazards that are a part of normal mining conditions. Rex Coal does not rebut this.

Contrary to Rex Coal's assertion, normal mining conditions are not perfect conditions. As the ALJ observed, miners work in "dynamic, industrial working environments with many hazards that, while

not expected, are foreseeable." Safety regulations, such as the requirement that trucks be equipped with adequate brakes, are designed to help keep miners safe even when things go wrong. This is especially true of brakes, which are themselves safety devices that drivers use to avoid accidents.

Finally, the ALJ's finding that Rex Coal violated 30 C.F.R. § 77.1606(a) by failing to perform an effective preshift inspection was supported by substantial evidence. Section 77.1606(a) states: "Mobile loading and haulage equipment shall be inspected by a competent person before such equipment is placed in operation. Equipment defects affecting safety shall be recorded and reported to the mine operator." Because Rex Coal admits that the truck's brakes were defective and that these defects were not recorded, its challenge to the ALJ's finding of a violation lacks merit. However, Rex Coal also argues that its preshift inspection was reasonable and that accordingly it was not negligent in failing to discover and record the defects.

The ALJ's finding of moderate negligence was justified in light of the high standard of care to which mine operators are held and in light of the inspection's failure to test the brakes for high-demand situations. "Under the Mine Act, an operator is held to a high standard of care. A mine operator is required to be on the alert for conditions and practices in the mine that affect the safety or health of miners and to take steps necessary to correct or prevent hazardous conditions or practices." 30 C.F.R. § 100.3(d). An operator is moderately negligent when "[t]he operator knew or should have known of the violative condition or practice, but there are mitigating circumstances." 30 C.F.R. § 100.3 Table X–Negligence. Rex Coal's preshift inspection merely checked whether the brakes were sufficient to hold a stationary truck on a flat surface and a slight grade. This inspection was not adequate to evaluate the condition of the brakes, given that the brakes needed to "stop a moving truck on a 22% grade." Even apart from the contrast between the slight grade for testing and the 22% grade for actual use, an inspection that fails to reveal that a truck's brakes are at 20% capacity is not an inspection that would compel a finding of low or no negligence. Rex Coal argues that it should not have been expected to use the pushrod-stroke method for inspecting the brakes, as even the MSHA inspector admitted that that method was not required and not normally used by truck operators. But Rex Coal's negligence is based on its failure to discover and record defects in the brakes, not on its failure to use the pushrod-stroke method.

We are troubled that the negligence in each of the three violations boils down to the same thing: inadequate brakes. Negligence in the failure to control the truck was due to inadequate brakes, not driving the truck in neutral. Negligence in the second violation was specifically due to inadequate brakes. And negligence in failing to inspect was based not on any specifically required brake test but, again, on the mere fact that the brakes were indeed inadequate, such that the inspection must have not been sufficient. While any of these negligence conclusions is eminently reasonable, it does appear to be "piling on" for MSHA to impose three separate fines when precisely the same negligence happens to result in violations of three separate regulations. Rex Coal does not argue that this triple-counting is not permissible, and it may well be that it is permissible. MSHA should use caution, however, in the exercise of its discretion in issuing multi-

plicitous citations for the identical negligence.

The petition for review is denied.